# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of the Governor,    :
      Petitioner  :
          :
  v.       : No. 1940 C.D. 2014
          : Argued: June 17, 2015
Robert H. Davis, Jr.,    :
      Respondent :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge
      HONORABLE BERNARD L. McGINLEY, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ROBERT SIMPSON, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION**
**BY JUDGE SIMPSON**     **FILED: August 12, 2015**


    The Office of the Governor (Governor's Office) petitions for review from a final determination of the Office of Open Records (OOR), granting in part and denying in part the request of Robert H. Davis, Jr., Esquire (Requester) under the Right-to-Know Law (RTKL).[1]  Requester sought records underlying a letter drafted by counsel in the Office of General Counsel (OGC).  The Governor's Office contends OOR erred in applying the attorney-client privilege and the predecisional deliberative exception in Section 708(b)(10) of the RTKL, 65 P.S. §67.708(b)(10).  Specifically, it argues OOR misplaced the burden of proof when analyzing the privilege, and misconstrued the "internal" element of the predecisional deliberative exception.  Upon review, we vacate and remand.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101—67.3104.

# I. Background

On March 27, 2014, Requester filed a RTKL request generally seeking records pertaining to the Pennsylvania Game Commission's (Commission) consideration of William Capouillez (Capouillez) for the position of its Executive Director. Specifically, he sought:

> A copy of all records and any form of communication, in whatever format or form they may exist, from the period June 1, 2013 to the present, created, sent, received or referred to others by Governor Tom Corbett, Deputy Chief of Staff and Energy Executive Patrick Henderson, Press Secretary Jay Pagni and Deputy Chief of Staff Luke Bernstein and any members of their staffs and any person employed by any energy company regarding any information relating to William Capouillez, to Carl Roe, to any member of the [Commission] and any Executive Director Candidates or the interview process for such Executive Director Position and more specifically, while not limiting the preceding request, the following:
>
> [1] Copies of all records and any form of communication, in whatever format or form they may exist and of related information received, sent, or used by the [Governor's Office] to recommend the course of action as indicated in the March 11, 2014 letter of Jared W. Handelman, First Executive Deputy General Counsel directed to Bradley C. Bechtel, Chief Counsel, which is attached; and
>
> [2] Copies of all records and any and all forms of communication, in whatever format or form they may exist, and related information, received, sent, or created by the Governor and members of his Cabinet and Executive Staff (to include, but not limited to the specified 'published reports and other information' mentioned in the March 11, 2014 letter of [Attorney Handelman], to [Attorney] Bechtel, attached) which were considered or used in making the statement of [Handelman] in that letter that: 'In fact, I am confident ... [I] would not approve the appointment of [Capouillez] as the Executive Director of the [Commission];' and

[3]  With reference to a letter dated March 18, 2014 signed by Governor Corbett and others to any Commissioner of the [Commission], one of which letters is attached for your convenient reference:

[a]  Provide a copy of all records and any and all forms of communication received, developed or used by the [Governor's Office] as a basis of the facts stated in such letter and to recommend the course of action with regard to [Commission] employee [Capouillez] stated in such letter; and

[b]  Provide a copy of all records and any and all forms of communication, in whatever format or form they may exist and any related information from any source used or considered by the [Governor's Office] to cause the Governor or other signatories to make the statement of 'request' in the penultimate paragraph, page 2, of the March 18th letter, attached for your convenient reference, that any Commissioner who was 'otherwise inclined to refuse the above recommendations, alternatively[,] we request that you immediately resign your appointment to the Board of Commissioners;' and

[c]  Provide a copy of all records and any and all forms of communication, in whatever format or form they may exist and any related information from any source used or considered by each signatory of the March 18th letter, attached, known by the [Governor's Office] to reflect the opinions, views or positions of any signatory of such letter, to recommend the factual conclusions, the recommendations and the requests contained in such letter; including but not limited to the 'request' that any Commissioner who might be 'otherwise inclined to refuse the above recommendations, [alternatively] we request that you immediately resign your appointment to the Board of Commissioners.'

Amended Reproduced Record (R.R.) at 22a-24a (Request).  Requester attached the March 11th and March 18th letters referenced in the Request, in which various executive and legislative officials recommended that the Commission not consider Capouillez as a candidate for the Executive Director position.  R.R. at 25a-28a.

3

After invoking a 30-day extension, the Governor's Office partially granted and partially denied the Request, withholding: personal e-mail addresses and phone numbers pursuant to Section 708(b)(6) of the RTKL, 65 P.S. §67.708(b)(6); documents reflecting internal, predecisional deliberations pursuant to Section 708(b)(10) of the RTKL; and, documents containing communications exempt under the attorney-client privilege.

Requester appealed to OOR. OOR invited the parties to supplement the record. In response, the Governor's Office provided a position statement and requested that OOR conduct *in camera* review of the records at issue. Requester also provided a position statement. Thereafter, upon OOR's request, the Governor's Office submitted Bates-labeled records to OOR for *in camera* inspection, accompanied by an index setting forth an exemption as to each Bates-labeled record (Index). The Index identified each email by date and time, the names of participants, and, for some records, the subject of the email. See Supplemental Reproduced Record (S.R.R.) 1b-12b. The Index did not identify the employer or title of the participants, and it did not explain how each exemption applied to the records.

Based on its *in camera* review, OOR issued a final determination, Davis v. Pennsylvania Office of the Governor, OOR Dkt. No. AP 2014-0835 (issued September 26, 2014) (Final Determination), denying the appeal in part, and granting the appeal in part. OOR concluded the Governor's Office properly redacted personal e-mail addresses and phone numbers, and properly withheld certain records under the predecisional deliberative exception. As to the records

4

found exempt, OOR referenced records and parts of records Bates-labeled OG 001-069 identifying which portions were exempt with some specificity. However, OOR granted access to the records Bates-labeled OG 070-133 without explaining the reasons for finding them not exempt with reference to specific records.

With regard to the predecisional deliberative exception, OOR stated it found portions of the records Bates-labeled OG 001-069 protected because they "reflect the internal, predecisional deliberations of [Governor's] Office employees and employees or officials of an agency as defined by the RTKL." Final Determination at 9. Significantly, OOR did not indicate which of the "remainder of the records … are not internal and/or deliberative in nature" by Bates-label or any other descriptor.[2] Id.

> In determining the "remainder" was not protected, OOR explained:
>
> Records are not 'internal' under Section 708(b)(10) if they are sent to or from a party that is not an employee or official of an entity that is defined as an agency under the RTKL. … Here, certain responsive records are not 'internal' because they originate from individuals that are not employees or officials of an agency. Additionally, certain records claimed to be subject to this exemption were provided to the Requester ….
>
> Further, other records at issue are not deliberative in nature. The term 'deliberation' is generally defined as '[t]he act of carefully considering issues and options before making a decision or taking some action ….' Factual information and statements are not deliberative in nature. Additionally, although discussions among employees of an agency may be internal and predecisional, an agency also has to demonstrate

---

[2] OOR noted that, pursuant to its Interim Guidelines, it referred to the records reviewed *in camera* and their contents with generic descriptions. See Final Determination at 6 n.2.

5

that these discussions are deliberative. In the instant case, the [Governor's] Office has not demonstrated that certain records are deliberative in nature.

Final Determination at 9-10 (citations omitted) (emphasis added).

With regard to the attorney-client privilege, OOR concluded the Governor's Office did not meet its burden of proof. OOR determined "certain records" on their face met the first three prongs of the privilege, but were not entitled to exemption because the Governor's Office did not provide any evidence of non-waiver. Id. at 6. OOR also noted the Governor's Office did not submit an affidavit to support the elements of the privilege, concluding the unsworn position statement was not competent evidence. Regardless of the lack of evidence, OOR reasoned "certain records" would not be privileged "because they do not constitute communications that were made for the purpose of securing either an opinion of law, legal services or assistance in a legal matter." Id. at 7. Again, OOR did not identify these records by Bates-label or other designation.

The Governor's Office then filed a petition for review to this Court. After briefing, the matter was scheduled for oral argument. A few days before argument, the Governor's Office attempted to submit additional evidence for consideration by this Court on appeal. Specifically, the Governor's Office applied for leave to file the records reviewed *in camera* under seal and requested an evidentiary hearing, or alternatively, for permission to supplement the record with an affidavit and a more detailed privilege log. This Court denied that request.

6

Originally, OOR did not include the *in camera* records in the certified record. In accordance with our decision in <u>Bagwell v. Department of Education</u>, 114 A.3d 1113 (Pa. Cmwlth. 2015) (<u>Bagwell (2015)</u>, this Court ordered OOR to complete the certified record by submission of the Bates-labeled records it reviewed under seal. OOR complied in July. Based on the complete evidentiary record, we undertake appellate review of OOR's determination.

## II. Discussion

On appeal,[3] the Governor's Office argues OOR erred as a matter of law in placing the burden of proving non-waiver of the attorney-client privilege on the agency. It asserts there is no evidence indicating it waived the privilege, and such waiver should not be presumed. Consequently, OOR erred in not protecting those records containing privileged legal communications. The Governor's Office also contends OOR erred in applying the predecisional deliberative exception. It challenges OOR's interpretation of the "internal" element as too narrow.

Requester counters that it is the Governor's Office's burden to establish that the privilege was not waived. He emphasizes OOR concluded that some of the records did not qualify as communications pertaining to legal advice, and so those records would not be privileged regardless of evidence of waiver. Requester also maintains an unsworn statement does not constitute evidence and is insufficient to support any of the asserted exemptions.

---

[3] In a RTKL appeal involving a Commonwealth agency, this Court has the discretion to rely upon the record created below or to create its own. <u>Dep't of Labor & Indus. v. Heltzel</u>, 90 A.3d 823 (Pa. Cmwlth. 2014) (<u>en</u> <u>banc</u>); <u>see</u> <u>also</u> <u>Bowling v. Office of Open Records</u>, 990 A.2d 813 (Pa. Cmwlth. 2010) (<u>en</u> <u>banc</u>), <u>aff'd</u>, 75 A.3d 453 (Pa. 2013).

The RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." Pa. State Police v. McGill, 83 A.3d 476, 479 (Pa. Cmwlth. 2014) (en banc). Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed. Id.

Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) *exempt under Section 708 of the RTKL*; (2) "*protected by a privilege*;" or, (3) exempt under any other Federal or State law or regulation or judicial order or decree. Section 305 of the RTKL, 65 P.S. §67.305 (emphasis added). Section 102 of the RTKL defines "privilege" as:

> The attorney work-product doctrine, the *attorney-client privilege*, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court incorporating the laws of this Commonwealth.

65 P.S. §67.102 (emphasis added). The burden of proving a privilege rests on the party asserting it. Heavens v. Dep't of Envtl. Prot., 65 A.3d 1069 (Pa. Cmwlth. 2013). Similarly, pursuant to Section 708(a) of the RTKL, an agency bears the burden of proving the application of any of the exceptions within Section 708(b) by a preponderance of the evidence. See 65 P.S. §67.708(a).

Thus, the Governor's Office bears the burden of proving the attorney-client privilege or the predecisional deliberative exception protects the records.[4]

---

[4] From review of the *in camera* records, the records at issue here consist of correspondence, the majority of which are emails, and their attachments.

8

## A. Exemptions
### 1. Attorney Client Privilege

We recently assessed OOR's application of the attorney-client privilege in <u>Bagwell v. Department of Education</u>, 103 A.3d 409 (Pa. Cmwlth. 2014) (<u>Bagwell (2014)</u>). There, we held that to establish the attorney-client privilege, the agency claiming it must demonstrate:

> (1) The asserted holder of the privilege is or sought to become a client.
>
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> (3) The communication relates to a fact of which the attorney was informed by his client, <u>without the presence of strangers</u>, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> (4) The privilege has been claimed and is not waived by the client.

<u>Id.</u> at 420 n.12 (emphasis added) (citing <u>Nationwide Mut. Ins. Co. v. Fleming</u>, 924 A.2d 1259 (Pa. Super. 2007), <u>aff'd by an equally divided court</u>, 992 A.2d 65 (Pa. 2010)). We also confirmed that after an agency establishes the privilege was properly invoked under the first three prongs, the party challenging invocation of the privilege must prove waiver under the fourth prong. <u>Id.</u>; <u>see</u> <u>also</u> <u>Carbis Walker, LLP v. Hill, Barth & King, LLC</u>, 930 A.2d 573 (Pa. Super. 2007).

Further, "the privilege only applies where the client's ultimate goal is *legal* advice." <u>Nat'l RR Passenger Corp. v. Fowler</u>, 788 A.2d 1053, 1064 (Pa. Cmwlth. 2011) (emphasis added). The central requirement is that

9

"communications be for the purpose of securing or providing professional legal services. Thus … the privilege does not extend to business advice or protect clients from factual investigations." Gillard v. AIG Ins. Co., 15 A.3d 44, 52 n.8 (Pa. 2011) (opinion in support of affirmance).

Here, OOR determined the privilege did not protect some of the records because the Governor's Office did not prove waiver, the fourth prong. Additionally, OOR noted that some of the records to which the Governor's Office invoked the privilege did not qualify under the third prong as communications pertaining to legal advice.

As OOR reasoned, the privilege holder must establish the communication was confidential, meaning shared only within the attorney-client relationship. Indeed, as part of the third prong, the party invoking the privilege must establish the records are confidential, in that they are not circulated among "strangers." Fleming. However, once the Governor's Office establishes the privilege, Requester bears the burden of proving waiver. Bagwell (2014). To the extent OOR concluded any of the records did not qualify as privileged because the *Governor's Office* did not establish waiver, OOR erred. Id.

Therefore, we remand to OOR to reconsider the privilege issue in accordance with Bagwell (2014). See also Bagwell (2015) (remanding to allow requester to submit evidence to establish waiver prong of privilege). Although Requester did not submit evidence of waiver, he contends "[the Index] shows the records were shared among the Governor's Office, the [Commission], the legislature

10

and even the Governor's Energy Advisor." Resp't's Br. at 14. OOR shall consider whether circulation among such recipients takes the communication outside the attorney-client relationship.

## 2. Predecisional Deliberative Exception

Here, the Governor's Office relied entirely on the records submitted *in camera*, the Index, and the cover letter from counsel to support its assertion of the predecisional deliberative exception in Section 708(b)(10)(i) of the RTKL. The exception protects a record that reflects:

> (A) The <u>internal, predecisional deliberations of an agency</u>, its members, employees or officials or predecisional deliberations <u>between agency members</u>, employees or officials and members, employees <u>or officials of another agency</u>, <u>including predecisional deliberations relating to</u> a budget recommendation, legislative proposal, legislative amendment, contemplated or <u>proposed policy or course of action</u> or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A) (emphasis added).

To establish this exception, an agency must show: (1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus "predecisional." <u>Carey v. Dep't of Corr.</u>, 61 A.3d 367 (Pa. Cmwlth. 2013). "Only information that constitutes 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice' is protected as 'deliberative.'" <u>Id.</u> at 378 (citation omitted). Records may satisfy the "internal" element when they are maintained internal to one agency or among governmental agencies. <u>Id.</u>; see <u>Kaplin v. Lower</u>

11

Merion Twp., 19 A.3d 1209, 1216 (Pa. Cmwlth. 2011) (exception covers two distinct situations, one involves deliberation within one agency, the other involves deliberative communication between two agencies when agencies collaborate regarding a course of action).

The origination of records from outside an agency does not preclude application of the RTKL exceptions. See Bagwell v. Dep't of Educ., 76 A.3d 81 (Pa. Cmwlth. 2013) (records originating with Penn State University, which is not an agency, may become records of an agency when records are used in agency decision-making). Therefore, OOR erred to extent it determined certain records were not protected by this exception based on their origin outside an agency. Final Determination at 9 ("records are not 'internal' because they originate from individuals that are not employees or officials of an agency.").

Further, it is unclear from the Final Determination how OOR construed the "internal" element of the exception. Records qualify as internal when maintained among agencies collaborating toward an agency action or decision. Kaplin. That the Commission may have consulted with the Governor's Office or OGC in making a hiring decision does not destroy the legitimacy of the exception.

OOR also advised generally that "other records at issue are not deliberative in nature." Final Determination at 9. OOR did not explain why it could not discern the deliberative nature from its review of the records *in camera*. Thus, we lack sufficient information to review the merits of OOR's determination that "certain records" are not deliberative in nature.

## B. Sufficiency of Evidence

As we are remanding to OOR, we address Requester's arguments questioning the sufficiency of the Governor's Office's evidence to offer OOR additional guidance.

The only evidence the Governor's Office submitted to OOR were the records reviewed *in camera*.[5]  There is no dispute the Governor's Office did not submit an affidavit or any other documentary evidence to OOR.  Its unsworn position statement does not constitute evidence.  Position statements are akin to briefs or proposed findings of fact, which, while part of the record, are distinguishable from the *evidentiary* record.  See Sherrill v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.), 624 A.2d 240 (Pa. Cmwlth. 1993) (distinguishing briefs and proposed findings from evidence); see also Housing Auth. of Pittsburgh v. Van Osdol, 40 A.3d 209 (Pa. Cmwlth. 2012) (assertions in briefs are not evidence).

Requester argues the exemptions cannot be evaluated without an affidavit or other documentary evidence supporting each element of each exemption. We disagree.

Early into our work with the new RTKL, this Court recognized the utility of affidavits as evidence upon which an appeals officer may base a decision. See, e.g., Sherry v. Radnor Twp. Sch. Dist., 20 A.3d 515 (Pa. Cmwlth. 2011) (recognizing affidavits may be used to establish exemptions); Moore v. Office of

---

[5] The Index that accompanied the records, which was unverified, constitutes an interpretive aid as opposed to evidence.

13

Open Records, 992 A.2d 907 (Pa. Cmwlth. 2010) (affidavit suffices to establish nonexistence of records). Indeed, this Court cited lack of a sufficiently detailed affidavit as the grounds for rejecting asserted exemptions. See, e.g., Office of Governor v. Scolforo, 65 A.3d 1095 (Pa. Cmwlth. 2013) (en banc) (holding agency did not meet burden of proving predecisional deliberative exception because affidavit consisted of conclusory statements). However, this Court has not held an affidavit or other verified statement is *required* to prove an exemption. Rather, we hold *evidence* is required, and in the RTKL context, an affidavit may serve that function.

Similarly, we held records reviewed *in camera* are sufficient evidence for an agency to meet its burden of proof. See Pa. State Police v. Office of Open Records (Gilliland), 5 A.3d 473 (Pa. Cmwlth. 2010) (en banc), appeal denied, 76 A.3d 540 (Pa. 2013) (court reviewed incident report *in camera* and held the report as a whole was protected); accord LaValle v. Office of Gen. Counsel, 769 A.2d 449 (Pa. 2001) (noting utility of *in camera* review when generic descriptions are insufficient, resulting in an inadequate record before the agency). Recognition of OOR's authority to utilize *in camera* review to assess protected status is of relatively recent vintage. See Office of Open Records v. Center Twp., 95 A.3d 354 (Pa. Cmwlth. 2014) (en banc). Thus, an affidavit may be unnecessary when an exemption is clear from the face of the record. Gilliland. Moreover, when descriptions of records may undermine the very protection sought, an affidavit may be counterproductive and infeasible. See Lame v. U.S. Dep't of Justice, 654 F.2d 917 (3d Cir. 1981) (*in camera* index necessary in Freedom of Information Act, 5 U.S.C. §552, context to protect record content).

14

Records reviewed *in camera* may serve as a sufficient basis for a fact-finder to assess whether an exemption applies. See Levy v. Senate of Pa., 65 A.3d 361 (Pa. 2013) (approving special master's review of legal invoices *in camera* to determine privileged status); Center Twp.; accord McGowan v. Dep't of Envtl. Prot., 103 A.3d 374 (Pa. Cmwlth. 2014) (remanding to OOR to evaluate email *in camera* and assess deliberative contents, and subject factual content to mandatory redaction). An index, even one containing minimal description, offers a tool for a fact-finder reviewing corresponding records. Accord Heavens (explaining value of index corresponding exemptions to described records).

We agree with Requester that the Index here is vague and does not contain sufficient information to establish the exemptions. Regardless, OOR had the opportunity to review the unredacted records themselves. A fact-finder reviewing unredacted records may be in a better position to evaluate content than a fact-finder with only an index or an affidavit. See Center Twp. (explaining utility of *in camera* review for appeals officer as initial fact-finder to assess exemptions).

Days prior to argument, the Governor's Office attempted to supplement the record with a more detailed index. This Court denied the request because OOR afforded the agency an adequate opportunity to submit evidence below. However, during argument Requester's counsel noted the supplemental index contained more information regarding the records at issue. Additional description in an index may assist Requester in his challenges. Additional information in an index also may assist OOR and this Court in ascertaining how the denial grounds apply, and what the records mean. Therefore, while this case is

15

remanded on the existing record as submitted to OOR, Requester may stipulate to the inclusion of a more detailed index.

### C. Sufficiency of Final Determination

This Court is not in a position to evaluate OOR's decisions as to the non-protected records (OG 070-133). Because OOR did not sufficiently describe the records it ordered disclosed (for example, by Bates-label, date, time of correspondence or author), we cannot evaluate OOR's reasoning as to each record ordered disclosed.

Specifically, this Court cannot correlate each non-protected record with each of the four reasons OOR gave as grounds for their disclosure: (1) not pertaining to legal advice (Non-Privileged Records); (2) privileged records to which the agency waived the privilege by circulating them among individuals outside the attorney-client relationship (Privilege Waived Records); (3) records that originated outside the agency, or were sent or received by non-agency personnel, (Non-Internal Records); or, (4) records that were not deliberative in nature (Non-Deliberative Records). Absent some correlation between the reason for rejecting an exemption and the record at issue, the Final Determination is not amenable to appellate review.

Therefore, on remand, in addition to applying the correct legal standards for the attorney-client privilege and the predecisional deliberative exception, OOR shall explain how each exemption applies to each record with reference to the Bates-labels. OOR's reasons for ordering the records disclosed,

(Non-Privileged Records, Privilege Waived Records, Non-Internal Records, Non-Deliberative Records), should correspond to the remaining Bates-Labeled records, OG 070-133. In that manner, this Court may assess whether OOR committed legal or factual error, or applied the exemptions in accordance with decisional law.

## III. Conclusion

For the foregoing reasons, we vacate OOR's final determination, and remand to OOR to reissue a final determination in accordance with this opinion. OOR shall reissue a final determination addressing all of the records at issue within 30 days of return of the record from this Court.

On remand, OOR shall be limited to the current evidentiary record; however, upon agreement of the parties, the record may be enlarged by receipt of a supplemental index.

In the reissued final determination, OOR shall explain its reason for rejecting the asserted exemptions with specific reference to the records by Bates-label corresponding to the four categories set forth above in order to permit appellate review.

ROBERT SIMPSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| Office of the Governor, | | : | |
| | Petitioner | : | |
| | | : | |
| v. | | : | No. 1940 C.D. 2014 |
| | | : | |
| Robert H. Davis, Jr., | | : | |
| | Respondent | : | |

# **O R D E R**

AND NOW, this 12th day of August, 2015, the final determination of the Office of Open Record (OOR) is VACATED and the matter is REMANDED to OOR to reissue its final determination in accordance with the foregoing opinion, based on the existing record, with the exception of a more complete index corresponding to the exemptions contingent upon Respondent's agreement to such supplementation.

OOR shall reissue its final determination within 30 days of the date it receives the record returned from this Court, including sufficient explanation of its reasoning for determining records protected or public for each exemption asserted as to each record, using reference to the records by Bates-label.

Jurisdiction is retained.

---
ROBERT SIMPSON, Judge